**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 22-cv-01068-NYW-KAS

LESLIE ARNOLD,

     Plaintiff,

v.

WELD COUNTY SCHOOL DISTRICT RE-5J,
MICHAEL WAILES, in his individual capacity,
NATE SASSANO, in his individual capacity,
SARA HALL, in her individual capacity, and
JEREMY SCOTT, in his individual capacity,

     Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

Pending before the Court is Defendants' Motion for Summary Judgment (the "Motion" or "Motion for Summary Judgment"), [Doc. 81, filed June 20, 2023], filed by Defendants Weld County School District RE-5J (the "District"), Michael Wailes ("Mr. Wailes"), Nate Sassano ("Mr. Sassano"), Sara Hall ("Ms. Hall"), and Jeremy Scott ("Mr. Scott") (collectively, "Defendants"). Plaintiff Leslie Arnold ("Plaintiff" or "Ms. Arnold") opposes the Motion, [Doc. 88], and Defendants have replied, [Doc. 92]. The Court has reviewed the briefing on the Motion and the applicable case law, and concludes that oral argument would not materially assist in the resolution of this matter. For the reasons set forth herein, the Motion is respectfully **DENIED**.

## BACKGROUND

Ms. Arnold, a former Superintendent of Schools for the District ("Superintendent"), brings this action against the District and several current and former members of its Board

of Education (the "Board"), alleging that they unlawfully retaliated against her by terminating her employment following her complaints about discriminatory conduct by Roosevelt High School ("RHS") Principal Brian Littlefield ("Principal Littlefield") and the District's response to that conduct.  Her First Amended Complaint and Jury Demand ("First Amended Complaint"), [Doc. 31, filed August 22, 2022], states four retaliation claims.  Against all Defendants, Ms. Arnold brings a claim via 42 U.S.C. § 1983 for retaliation in violation of 42 U.S.C. § 1981 ("Count I").  [*Id.* at ¶¶ 76–88].  Against only the District, Ms. Arnold alleges retaliation in violation of Title VII, Title VI, and the Colorado Anti-Discrimination Act ("CADA") ("Count II," "Count III," and "Count IV," respectively).  [*Id.* at ¶¶ 89–110].  Ms. Arnold seeks reinstatement, lost wages, compensatory damages for emotional distress and reputational harm, and punitive damages, among other forms of relief.  [*Id.* at 27–28].

Defendants moved to dismiss all claims.  [Doc. 34].  On June 14, 2023, the Court denied Defendants' motion in its Order on Motion to Dismiss.  [Doc. 80].  The Court found that Plaintiff sufficiently alleged that she engaged in protected activity for purposes of all claims.  [*Id.* at 10–15, 20, 21 n.9, 27].  The Court also rejected additional arguments that a "manager rule" precluded the Title VII claim, that Ms. Arnold was not an employee under Title VII, that the First Amended Complaint failed to allege impairment of contractual rights for the § 1981 claim, that qualified immunity shielded the Board members from suit, and that Title VI was unavailable because Ms. Arnold failed to plead that the District received federal funds for purposes of providing employment.  *See* [*id.* at 15–28].  On June 20, 2023, Defendants moved for summary judgment as to all claims.  The Motion is now ripe for resolution.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (quotations omitted).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (quotation omitted).

To satisfy its burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2738 (4th ed. April 2023 update) (explaining that the nonmovant cannot rely on "mere reargument of a party's case or the denial of an opponent's allegation" to defeat summary judgment).  In considering the nonmovant's evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, the Court may consider only admissible

evidence, *see Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).  For instance, "if th[e] evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge."  *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).  Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury."  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

## ANALYSIS

The Court begins by setting forth the undisputed material facts for purposes of the Motion and then turns to Defendants' summary judgment arguments.

**I.  Undisputed Material Facts**[1]

1.  Effective in July 2018, the District hired Ms. Arnold as Superintendent of Schools under a three-year contract that gave the Board unilateral termination rights. [Doc. 81 at ¶ 1; Doc. 88 at 2; Doc. 81-2 at 1–4].

2.  Materially identical three-year contracts followed in 2019, 2020, and 2021. [Doc. 81 at ¶ 1; Doc. 88 at 2; Doc. 81-2 at 5–16].

---

[1] As the Parties list 71 facts, many of which are framed as disputed to varying degrees, the Court limits its discussion at this stage to those facts that are material to resolving the Motion.  Additionally, the Parties identify several disputes of fact that only demonstrate denial of a specific portion of a statement of fact or fail to offer competent contrary evidence, in contravention of Rule 56(c) of the Federal Rules of Civil Procedure and Civil Practice Standard 7.1D(b)(4).  When this is the case, the Court accepts the portions that are not objected to or otherwise disputed as undisputed without further note.

3.     The District hired Ms. Arnold through a competitive selection process that involved interviewing several candidates.  [Doc. 88 at 5 ¶ 1; Doc. 92 at 4 ¶ 1; Doc. 88-2 at ¶ 4].

4.     As Superintendent, Ms. Arnold's job responsibilities encompassed hiring decisions and supervising the curriculum, instruction, organization, business, structure, and other aspects of the District's operations.  [Doc. 81 at ¶ 2; Doc. 88 at 2; Doc. 81-1 at 108:19–25].[2]

5.     Ms. Arnold was not a policymaker for the District.  [Doc. 88 at 5 ¶ 2; Doc. 92 at 4 ¶ 1; Doc. 88-2 at ¶ 5].

6.     During her time as Superintendent, Ms. Arnold was never disciplined, warned, or formally counselled about her job performance by the Board.  [Doc. 88 at 7 ¶ 5; Doc. 92 at 4 at ¶ 1; Doc. 88-13 at 38:13–39:20].

7.     In 2018, Ms. Arnold hired Cara Anderson ("Ms. Anderson") as the District's first Human Resources Director.[3]  [Doc. 81 at ¶ 5; Doc. 88 at 2; Doc. 81-1 at 151:8–11, 152:1–8].

8.     Ms. Arnold hired Principal Littlefield to serve as RHS's principal for the 2019–2020 school year and became his supervisor in October 2020.  [Doc. 81 at ¶¶ 3–4; Doc. 88 at 2 & ¶ 3; Doc. 81-1 at 117:8–11, 128:20–23].

---

[2] When citing to a transcript, this Court refers to the docket number assigned by this District's CM/ECF system, but the page and line number of the original transcript, for the purpose of consistency.

[3] Defendants state the year of Ms. Anderson's hire as 2019, but the deposition testimony cited in support references a hire date in late 2018.  *Compare* [Doc. 81 at ¶ 5], *with* [Doc. 81-1 at 151:8–11].  Any discrepancy is not material to this Order.

9.      During the 2020–2021 school year, the Board's members were Mr. Wailes, Mr. Scott, Mr. Sassano, Ms. Hall, and non-party Peggy Wakeman ("Ms. Wakeman").[4] [Doc. 81 at ¶ 6; Doc. 88 at 2; Doc. 81-4 at ¶ 3].

10.      In early 2021, Ms. Arnold tasked Principal Littlefield with representing the District at certain negotiation sessions with the teacher's union ("JMEA") regarding a new schedule for RHS.   [Doc. 81 at ¶ 7; Doc. 88 at 2; Doc. 81-1 at 194:1–13; Doc. 81-5 at 88:2–89:13].

11.      Principal Littlefield delivered a low-quality presentation and the JMEA rejected the proposed schedule.   [Doc. 81 at ¶ 9; Doc. 88 at 2 ¶ 9; Doc. 81-1 at 194:14–19; Doc. 81-5 at 88:12–15].

12.      In February 2021, Ms. Arnold received generally positive job evaluations from Board members, although some concerns were noted regarding her communications with staff and the Board, among other issues.   [Doc. 81 at ¶ 8; Doc. 88 at 2; Doc. 81-6 at 2–6].

13.      In late February 2021, Ms. Arnold received complaints that Principal Littlefield made homophobic comments; engaged in misogyny; called students a term which means "stupid farmers"; failed to address reports of bullying; and failed to sufficiently address several complaints related to racially charged incidents at RHS, including a matter involving a Black Lives Matter flag and a student's use of a screen

---

[4] The First Amended Complaint names Ms. Wakeman as a defendant.  *See* [Doc. 31 at ¶ 10].   However, on December 19, 2022, the Parties stipulated to Ms. Wakeman's dismissal from this action under Federal Rule of Civil Procedure 41.  *See* [Doc. 56; Doc. 77].

name evoking a racial slur.  [Doc. 81 at ¶ 10; Doc. 88 at 2; Doc. 81-1 at 177:15–180:9, 183:8–184:18, 225:11–18, 287:22–25].

16.    On March 1, 2021, Ms. Arnold and Ms. Anderson informed Principal Littlefield that they would be investigating the complaints against him.  [Doc. 81 at ¶ 11; Doc. 88 at 2; Doc. 81-1 at 181:18–21; Doc. 81-5 at 85:14–22].

15.    On March 3, 2021, Principal Littlefield complained to Mr. Wailes about Ms. Arnold and Ms. Anderson; this was the first time Mr. Wailes learned about allegations against Principal Littlefield, although he did not know their contents.  [Doc. 81 at ¶ 13; Doc. 88 at 2; Doc. 81-4 at ¶ 4].

16.    The Board directed Ms. Arnold and Ms. Anderson to cease investigating the complaints against Principal Littlefield and hired a third-party investigator to handle all complaints.  [Doc. 81 at ¶ 15; Doc. 88 at 2; Doc. 81-1 at 232:8–12; Doc. 81-9 at 136:2–137:22].

17.    The Board subsequently received complaints about Ms. Arnold having poor communication skills, creating a hostile work environment, engaging in financial impropriety, and targeting employees for opposing her or supporting Principal Littlefield. [Doc. 81 at ¶ 16; Doc. 88 at 2; Doc. 81-4 at ¶ 7].

18.    On April 19, 2021, the third-party investigator submitted her findings to the District's counsel, in which she determined that the allegations against Principal Littlefield were all substantiated.  [Doc. 81 at ¶ 19; Doc. 88 at 2; Doc. 81-11 at 2].  The investigator also determined that Principal Littlefield's allegations against Ms. Arnold and Ms. Anderson were all unsubstantiated.  [Doc. 88 at 8 ¶ 7; Doc. 92 at 4 ¶ 1; Doc. 88-21 at 3–4].

19.     The Board received a summary of the investigation and shared the outcome with Ms. Arnold, Ms. Anderson, and Principal Littlefield.  [Doc. 81 at ¶ 20; Doc. 88 at 3 ¶ 20; Doc. 81-4 at ¶¶ 9–10].

20.     Mr. Wailes met with Ms. Arnold on April 21, 2021, to discuss Principal Littlefield's future with the district, including disciplinary alternatives to termination proposed by Mr. Wailes after Ms. Arnold recommended that Principal Littlefield be terminated because of his discriminatory conduct.  [Doc. 81 at ¶ 21; Doc. 88 at 2, 8 ¶ 8; Doc. 92 at 4 ¶ 1; Doc. 81-4 at ¶ 11; Doc. 88-2 at ¶ 26].

21.     That same day, Mr. Wailes shared Ms. Arnold's recommendation to immediately terminate Principal Littlefield with other Board members.  [Doc. 88 at 8 ¶ 9; Doc. 92 at 4 ¶ 1; Doc. 88-5 at 73:20–74:10].

22.     To minimize disruption, the Board allowed Principal Littlefield to remain at RHS, but issued a Written Warning and Letter of Directives ("Warning").  [Doc. 81 at ¶ 22; Doc. 88 at 2; Doc. 81-4 at ¶ 12; Doc. 81-14; Doc. 81-15 at 77:6–19].

23.     Ms. Arnold viewed the Board's response as inadequate and believed that keeping Principal Littlefield at RHS would perpetuate discrimination on the basis of race, sex, and sexual orientation.  [Doc. 88 at 9 ¶ 10; Doc. 92 at 5 ¶ 10; Doc. 88-2 at ¶ 28].

24.     Due to Principal Littlefield's previous accusations against Ms. Arnold, the Board assigned Assistant Superintendent Tami Kramer ("Ms. Kramer") to be his supervisor.[5]  [Doc. 81 at ¶ 23; Doc. 88 at 2; Doc. 81-4 at ¶ 13].

---

[5] The Court uses the spelling of Ms. Kramer's first name provided in her deposition.  *See* [Doc. 88-6 at 4:7–9].

25.     Following the Warning, Ms. Kramer received additional complaints concerning Principal Littlefield's response to discriminatory conduct at RHS, which she conveyed to Board members, who did not reevaluate their non-termination decision. [Doc. 88 at 10 ¶ 14; Doc. 92 at 5 ¶ 14; Doc. 88-6 at 71:8–76:10; Doc. 88-5 at 83:9–17].

26.     On April 22, 2021, Ms. Arnold contacted Mr. Wailes and told him that she opposed the Board's decision to issue the Warning because it would enable continued discrimination at RHS.  [Doc. 88 at 9 ¶ 10; Doc. 92 at 5 ¶ 10; Doc. 88-2 at ¶ 28].

27.     After Ms. Arnold expressed her concern about the Warning received by Principal Littlefield, her relationship with the Board deteriorated.  [Doc. 81 at ¶¶ 25–26; Doc. 88 at 2; Doc. 81-1 at 27:19–28:3; Doc. 81-13].

28.     On April 22 or April 26, 2021, the Board, through Mr. Scott, notified Ms. Arnold that it was reopening her employment evaluation to address concerns with her leadership.[6]  Mr. Scott told Ms. Arnold that the Board did not intend to terminate her employment and Ms. Arnold believed him.  [Doc. 88 at 9–10 ¶ 12; Doc. 92 at 4 ¶ 1; Doc. 88-2 at ¶ 29].

29.     On April 26, 2021, Ms. Arnold informed Ms. Kramer that she had retained an attorney who advised her to contest the Board's decision not to terminate Principal Littlefield.  [Doc. 81 at ¶ 29; Doc. 88 at 2; Doc. 81-20].

---

[6] Defendants state that this communication took place on April 22, 2021, and support the assertion of fact with evidence.  *See* [Doc. 81 at ¶ 28 (citing [Doc. 81-9 at 42:8–15])]. Plaintiff admits that fact.  [Doc. 88 at 2].  However, Plaintiff also appears to state, with evidentiary support, that this communication occurred on April 26, 2021. *See* [Doc. 88 at 9 ¶ 12 (citing [Doc. 88-2 at ¶ 29])].  Defendants admit that fact.  [Doc. 92 at 4 ¶ 1].  Any difference in date is immaterial to the Motion.

30.     On April 27, 2021, Mr. Wailes advised Ms. Arnold via email that the Board had "flagged some concerning patterns of behavior in [her] communication style and relationships within the District" and would be revisiting her employment evaluation.  [Doc. 81 at ¶ 30; Doc. 88 at 2; Doc. 81-21].

31.     In his email, Mr. Wailes described this step as a "growth opportunity" and did not mention any discipline or adverse or corrective action.  [Doc. 88 at 10 ¶ 13; Doc. 92 at 4 ¶ 1; Doc. 88-8 at 2].

32.     Ms. Arnold and Ms. Kramer determined that Principal Littlefield would finish the school year as co-principal of RHS.  [Doc. 81 at ¶ 31; Doc. 88 at 2; Doc. 81-4 at ¶ 17].

33.     On April 30, 2021, Ms. Arnold complained to Ms. Kramer that the Board was blaming Ms. Arnold for poor attendance; Ms. Arnold stated that "[t]he writing [wa]s on the wall."  [Doc. 81 at ¶ 32; Doc. 88 at 2; Doc. 81-22].

34.     At a public meeting on May 5, 2021, community members spoke in support of Principal Littlefield and complained to the Board about Ms. Arnold.  [Doc. 81 at ¶ 33; Doc. 88 at 2; Doc. 81-1 at 20:10–13].

35.     The Board met in executive session on May 5 and May 7, 2021, to discuss Ms. Arnold's employment and the possibility of terminating her.  [Doc. 81 at ¶ 34; Doc. 88 at ¶ 34, Doc. 92 at ¶ 34; Doc. 81-4 at ¶¶ 21–22].

36.     Ms. Arnold emailed the Board on May 7, 2021, reiterating that she "strenuously disagreed" with the decision not to terminate Principal Littlefield and writing that:

> The action the Board of Education took to leave Brian Littlefield at RHS until the end of the school year seems like it was done to potentially cover-up and to hide the fact that Brian Littlefield had 7 substantiated allegations against him that dealt with his involvement in racism, homophobia,

misogyny, not managing student bullying behaviors, not taking care for the safety and security of our staff and students, failure to do his job, and using derogatory slang to call our students essentially "stupid farmers". I shared with Michael Wailes I did not want this community "blowing up" prior to your work[]session when you heard these substantiated allegations[,] and I could agree to almost any scenario except leaving Brian at RHS. Even though the path was taken by the [B]oard to leave him at RHS, I'm still committed to calming the situation down.

[Doc. 88 at 11 ¶ 16; Doc. 92 at 4 ¶ 1; Doc. 88-29 at 2–3 (emphasis omitted)].

37.     At the May 7, 2021, Board meeting, the Board discussed Ms. Arnold's email and decided to exercise the unilateral termination provision of her contract. [Doc. 81 at ¶ 37; Doc. 88 at 2, 12 ¶ 18; Doc. 92 at 6 ¶ 18; Doc. 81-4 at ¶ 25; Doc. 88-9 at 156:23–160:12]. In Mr. Sassano's view, the Board did not have cause to terminate Ms. Arnold. [Doc. 88 at 13 ¶ 22; Doc. 92 at 6 ¶ 22; Doc. 88-5 at 110:1–10].

38.     When Ms. Arnold was informed of the Board's decision on May 12, 2021, her attorney suggested that the termination seemed retaliatory, and Board members explained their concerns with Ms. Arnold's communication and leadership. [Doc. 81 at ¶¶ 38, 40–41; Doc. 88 at 2; Doc. 81-4 at ¶ 27].

39.     The Board formally voted to terminate Ms. Arnold on May 19, 2021, after she opted against finishing the school year. [Doc. 81 at ¶¶ 39, 43–44; Doc. 88 at 2, ¶¶ 39, 43; Doc. 92 at ¶¶ 39, 43; Doc. 81-15 at 112:1–6; Doc. 81-17].

40.     The District paid Ms. Arnold for an additional year's work upon her termination, consistent with the employment agreement's unilateral termination clause. [Doc. 81 at ¶ 45; Doc. 88 at 1–11 (not addressing, and thus admitting, this statement of fact); Doc. 81-1 at 104:21–25].

41.     Principal Littlefield's employment contract expired in June 2021 and the Board did not intervene to renew his employment.  [Doc. 81 at ¶ 46; Doc. 88 at ¶ 44[7]; Doc. 92 at ¶ 46; Doc. 81-4 at ¶ 29].

42.     On November 15, 2021, the District submitted an official statement in response to Ms. Arnold's charge of discrimination with the Colorado Civil Rights Division in which it recounted her termination timeline in a manner inconsistent with some witness testimony in this action.  [Doc. 88 at 14 ¶ 25; Doc. 92 at 7 ¶ 25; Doc. 89 at 20].

## II.     Section 1981 Retaliation (Count I)

Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981.  The statute "encompasses a complaint of retaliation against a person who complained about a violation of another person's contract-related 'right.'"  *Muller v. Islands at Rio Rancho Homeowners Ass'n*, 564 F. App'x 411, 414 (10th Cir. 2014) (quoting *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445 (2008)).  Any claim thus requires "identify[ing] an impaired contractual relationship."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (quotation omitted).  A prima facie case for retaliation entails (1) protected opposition to discrimination, (2) an adverse action, and (3) a causal connection between them.  *See Muller*, 564 F. App'x at 414.  Here, Defendants argue that summary judgment is warranted on the protected-activity and causation prongs of Ms. Arnold's prima facie case.  [Doc. 81

---

[7] The Court agrees with Defendants that Plaintiff appears to have responded to Defendants' Statement of Undisputed Material Fact #46 in her Response to Defendants' Statement of Undisputed Material Fact #44.  *See* [Doc. 92 at ¶ 46 n.1].

at 11–15].  Defendants also argue that Mr. Wailes, Mr. Sassano, Ms. Hall, and Mr. Scott are qualifiedly immune from suit.  [*Id.* at 15–17].

### A.    Protected Activity

As this Court has discussed, [Doc. 80 at 14], there are no "magic words" necessary to qualify activity as protected opposition; instead, an employee simply must convey to an employer his or her concern that the employer has engaged in an unlawful practice prohibited by discrimination law.  *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).  Here, Defendants argue that neither relaying complaints about Principal Littlefield to the Board nor resisting the Board's decision not to terminate Principal Littlefield constituted protected activity by Ms. Arnold.  *See* [Doc. 81 at 11].  With respect to the former, Defendants assert that the undisputed facts show that Ms. Arnold did not "oppose discrimination when she told the Board about staff complaints, because she did not explain the nature of the complaints to the Board."  [*Id.*].  As to the latter, Defendants contend that "[o]bjecting to a discipline because it might 'seem' that . . . the action was undertaken to 'potentially' cover up negative findings against an individual is nothing more than a vague statement objecting to a course of action, not discrimination." [*Id.* at 12].  In response, Ms. Arnold focuses on (1) her notifying the Board in March 2021 about the allegations of discrimination against Principal Littlefield; (2) her complaint to Mr. Wailes on April 22, 2021, that keeping Principal Littlefield at RHS would perpetuate discrimination; and (3) her May 7, 2021, complaint that the Board inadequately remedied the discriminatory environment created by the Principal Littlefield situation.  *See* [Doc. 88 at 15–18].

The Court finds that genuine issues of material fact preclude summary judgment with respect to Defendants' protected-activity argument, particularly when it comes to the

timing and nature of the Board's knowledge of the allegations against Principal Littlefield. For example, Ms. Arnold asserts that, on March 4, 2021, she and Ms. Anderson conveyed to Board members Mr. Wailes and Ms. Wakeman that Principal Littlefield was allegedly discriminating on the basis of race, sex, and sexual orientation, and provided them with a copy of their investigation.  [Doc. 88 at 2 ¶ 14 (citing [Doc. 88-2 at ¶ 24])].  However, Defendants rely on other Board members' testimony to contend that the nature of the allegations against Principal Littlefield were unknown to Board members until the *third-party investigator* (not Ms. Arnold) provided her findings summary.  *See* [Doc. 81 at ¶ 20 (citing Doc. 81-9 at 125:19–25)].  Despite acknowledging that Plaintiff sent investigation documents to Mr. Wailes, Defendants nonetheless assert that "the undisputed evidence is that he did not read them; he forwarded them on to the third-party investigator."  [Doc. 92 at 8].  But Defendants do not cite any evidence for that assertion, [*id.*], and their response to Plaintiff's statement of fact does not contain any, [*id.* at 2 ¶ 14].  This factual dispute plainly bears on the protected-activity analysis by implicating the details of Ms. Arnold's alleged complaint to the Board, rendering summary judgment inappropriate and Defendants' other arguments related to protected activity nondispositive.  *See, e.g.*, *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1187 (10th Cir. 2016) (noting in ADA context that terminated employees can base retaliation claims "on any combination of putative protected activity").

Because the Court cannot resolve the aforementioned factual dispute at summary judgment, genuine issues of material fact prevent the Court from fully evaluating whether and when Ms. Arnold engaged in protected activity for purposes of her § 1981 claim.  As the judgment sought by Defendants is not warranted on this argument, and because

Defendants did not attempt to move for summary judgment with respect to whether other alleged instances of protected activity constituted protected activity as a matter of law, on their own terms, the Court does not have occasion to consider any remaining protected-activity arguments alluded to in the briefing. *Cf.* Fed. R. Civ. P. 56(a) (permitting a party to "identify[] . . . the part of each claim or defense . . . on which summary judgment is sought").

### B.    Causation

Defendants' sole causation argument in the Motion[8] is that, "[e]ven if Arnold's complaint that the Board's decision to leave Littlefield at RHS was protected activity . . . , she cannot demonstrate a causal connection between that complaint and her termination because the Board was already contemplating terminating Arnold's employment when she sent them the May 7 email." [Doc. 81 at 13–14]. Defendants suggest that it is a "well established" proposition, [*id.* at 14], that "employers need not refrain from previously planned actions upon learning that an individual has engaged in protected activity and 'their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality,'" *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1370 (10th Cir. 2015) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)). The Court need not consider this statement of law at any depth, however, because Defendants' timing argument, which assumes that their protected-activity challenge fails, suffers from a fundamental problem caused by Plaintiff's reliance on additional instances of protected activity.

---

[8] Additional arguments regarding the causal connection that appear for the first time in Defendants' reply brief are insufficiently developed for this Court's consideration. *See White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017).

Defendants may well be correct that they contemplated Ms. Arnold's termination before her May 7, 2021, email, and that fact may well have legal significance which the Court does not consider in this Order.  However, the evidence which Defendants cite, *see* [Doc. 81 at 14], does not establish that they contemplated Ms. Arnold's termination before her April 22, 2021, complaints to Mr. Wailes, which she has argued constitute protected activity, *see* [Doc. 81-4 at ¶ 18 (Mr. Wailes referring to the Board contemplating Ms. Arnold's termination between averments set on April 22 and April 27, 2021); Doc. 81-15 at 60:3–24 (undated reference to Board discussions "at the end of the Dr. Littlefield investigation" that either touched on terminating Ms. Arnold or merely her concerns about being terminated)].  In addition, issues of credibility with respect to the individual Board members' intentions are not for the Court to decide on summary judgment.  *See Fogarty*, 523 F.3d at 1165.  And the Court has already found genuine disputes of material fact concerning the notion that Ms. Arnold's protected activity for purposes of her § 1981 retaliation claim extends back to March 2021.  *See Foster*, 830 F.3d at 1187.  The Court thus agrees with Ms. Arnold's conclusion that, for purposes of summary judgment, it has not been shown that the Board decided to fire Ms. Arnold before all protected activity at issue.  *See* [Doc. 88 at 20].  As this is the only causation argument developed in the Motion, summary judgment is denied.[9]

---

[9] Defendants incorporate these same protected-activity and causation arguments as grounds for summary judgment on Plaintiff's claims under Title VII, Title VI, and CADA. *See* [Doc. 81 at 17].  As the Court has rejected those arguments in the § 1981 context, and Defendants do not adapt them any differently to Plaintiff's other claims, *see* [*id.*], the Court finds that these arguments do not warrant summary judgment in Defendants' favor on Count II, Count III, or Count IV.

C.      Qualified Immunity[10]

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When a defendant asserts a qualified immunity defense, the plaintiff must meet a strict two-part test.  The plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (citation and quotation omitted).   Plaintiff bears the burden to overcome the assertion of qualified immunity.  *See Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022) ("When a § 1983 defendant raises qualified immunity, . . . the burden shifts to the plaintiff.").   Here, Defendants argue that qualified immunity shields the individual Board members from Ms. Arnold's § 1981 claim because (1) Ms. Arnold has not shown a statutory violation and (2) the Board members did not violate clearly established law.  *See* [Doc. 81 at 16–17]. The Court rejected a version of this argument in the Order on Motion to Dismiss, [Doc. 80 at 24–26], and Defendants do not appear to engage with the Court's reasoning or authority in raising this argument again.

First, Defendants' sole argument with respect to the lack of a statutory violation is that they are entitled to qualified immunity because Ms. Arnold cannot establish that she

---

[10] In discussing qualified immunity, Defendants refer exclusively to Ms. Arnold's "constitutional rights."  *See* [Doc. 81 at 15–16; Doc. 92 at 13].  As in its Order on Motion to Dismiss, the Court assumes that Defendants mean to reference Ms. Arnold's statutory rights under 42 U.S.C. § 1981, as Ms. Arnold makes no constitutional claim in the First Amended Complaint.  *See generally* [Doc. 31]; *see also* [Doc. 80 at 24 n.11].

engaged in protected activity or that there is a causal connection between the Board members' decision to terminate her employment and her complaints about their chosen discipline for Principal Littlefield.  *See* [Doc. 81 at 16].  But, for the reasons discussed above, this argument is unavailing as genuine issues of material fact exist.  Turning to the clearly-established prong of the defense, the Court has already noted that, since at least 1988, it has been clearly established in the Tenth Circuit that "retaliatory actions against a white employee because of [her] efforts to defend the rights of racial minorities may violate the employee's rights as enumerated in § 1981."  [Doc. 80 at 25 (quoting *Patrick v. Miller*, 953 F.2d 1240, 1250 (10th Cir. 1992))].  Defendants do not discuss *Patrick* in the Motion or otherwise explain why with this Court's analysis of the clearly-established prong in the Order on Motion to Dismiss was incorrect.  *See* [Doc. 81 at 16–17].  For those reasons, the Court will not revisit its conclusion that the Board members are not entitled to qualified immunity.  *See* [Doc. 80 at 25].

### III.    Title VII Retaliation (Count II)

Defendants make two additional arguments with respect to Count II, relying on legal principles in the Title VII retaliation context that do not apply to the other claims. First, Defendants argue that a "manager rule" forecloses liability where Ms. Arnold was engaging in what could otherwise qualify as protected activity pursuant to her job responsibilities.  [Doc. 81 at 17–19].  Second, Defendants contend that Ms. Arnold does not qualify as an "employee" protected by Title VII because she is an "appointee on the policy making level" under 42 U.S.C. § 2000e(f).  [*Id.* at 19–20].  The Court previously rejected these arguments in its Order on Motion to Dismiss, *see* [Doc. 80 at 11–15, 18–20], and Defendants do not address the Court's analysis in the instant Motion.  The Court respectfully finds that, for purposes of summary judgment, the "manager rule"

argument is subject to a genuine dispute of material fact, while the Title VII exemption argument fails for the reasons the Court has previously discussed.

### A.      Manager Rule

Defendants assert that, "[u]nder the 'manager rule,' employees required as part of their job duties to report or investigate complaints of discrimination cannot claim that such reporting or investigating itself is a protected activity . . . because conveying another's discrimination complaint is not the same as opposing unlawful practices." [Doc. 81 at 17 (omission in original) (quoting *Loudon v. K.C. Rehab. Hosp., Inc.*, 339 F. Supp. 3d 1231, 1238 (D. Kan. 2018))]. According to Defendants, "[t]he evidence shows that Arnold did not step outside her role as Superintendent when she complained about [the Board's] chosen discipline of Littlefield." [*Id.* at 18]. But review of the summary judgment record reveals a genuine issue of material fact with respect to whether that is the case.

Ms. Arnold states that, "[i]n complaining to the Board about its failure to remedy substantiated findings of discrimination, Ms. Arnold was not acting pursuant to her job responsibilities," adding that "[i]t was not part of her job to voice disagreements with the Board's personnel decisions or [suggest] that it engaged in a coverup or other wrongdoing." [Doc. 88 at 12 ¶ 17]. For support, Ms. Arnold points to her deposition testimony and her sworn affidavit. *See* [*Id.* (citing [Doc. 88-1 at 267:25–268:8; Doc. 88-2 at ¶ 33])]. Defendants deny this statement of fact on the basis that it constitutes "a legal conclusion." [Doc. 92 at 6 ¶ 17]. Defendants also suggest that additional testimony by Ms. Arnold, as well as Board policy, contradict her representations about the scope of her position. [*Id.* (citing [Doc. 88-1 at 108:21–25, 286:4–11; Doc. 81-24])]. Last, Defendants argue that the Court should disregard Ms. Arnold's affidavit to the extent it is inconsistent with her testimony. [*Id.* (citing *Juarez v. Utah*, 263 F. App'x 726, 735 (10th Cir. 2008))].

The Court begins with Defendant's contention that Ms. Arnold's purportedly factual assertion of her job duties is really a legal conclusion.  While application of the legal doctrine invoked by Defendants—the "manager rule"—would entail legal analysis, the actual scope of Ms. Arnold's responsibilities as Superintendent is a factual issue subject to evidentiary proof.  *See, e.g.*, *Shewbridge v. El Dorado Irrigation Dist.*, No. 2:05-cv-00740-FCD-EFB, 2006 WL 3741878, at *7 (E.D. Cal. Dec. 19, 2006) (declining to grant summary judgment where there were "factual issues about whether plaintiff's job responsibilities included the obligation to report wrongdoing by the district either internally to his supervisors or externally to other agencies").  Defendants provide no authority for the proposition that this instead presents an issue of law.

Next, without reaching the issue of whether a "manager rule" applies to Plaintiff's Title VII claim, the Court finds that the evidence marshaled by the Parties for purposes of summary judgment creates a genuine issue of material fact with respect to the scope of Plaintiff's job responsibilities, such that summary judgment is improper at this stage. *Compare* [Doc. 88-2 at ¶ 33 (Plaintiff's description of her resistance to Principal Littlefield's discipline as falling outside her job responsibilities)], *with* [Doc. 81-24 at 3 (stating that Plaintiff's job duties include "[a]ct[ing] as professional adviser to the Board")]. Presented with this evidence, a reasonable juror could go either way, and it is not the Court's role at summary judgment to weigh the evidence.  *See Fogarty*, 523 F.3d at 1165. Finally, "[a]n affidavit may not be disregarded [solely] because it conflicts with the affiant's prior sworn statements.  In assessing a conflict under these circumstances, . . . courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue."  *See Law Co. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164, 1169

(10th Cir. 2009) (alterations in original and quotation omitted).  After review, the Court does not view Ms. Arnold's affidavit as inconsistent with her deposition testimony, so need not reach Defendant's argument that the affidavit should be disregarded as creating a "sham" issue under *Juarez*.  *See* [Doc. 92 at 6 ¶ 17].  Instead, the portions of Ms. Arnold's deposition testimony cited by Defendants, [*id.*], are, at best, ambiguous as to the scope of Ms. Arnold's duties, thus contributing to the very factual issue that precludes summary judgment on this theory, *see* [Doc. 88-1 at 108:21–25 (Ms. Arnold describing her job duties as "to make hirings and so forth for the benefit of the School District, to oversee all the business, the organization, structure, the curriculum, the instruction, and basically, the oversight of the School District itself")]; *see also* [*id.* at 286:4–11 (inapposite testimony)].  For these reasons, the Court declines to grant summary judgment on Defendants' "manager rule" argument.

### B.    Exemption to Employee Status

Finally, the Court addresses Defendants' Title VII exemption argument.  Title VII only covers "employees."  *See* 42 U.S.C. § 2000e-3(a).  An "employee" is defined as "an individual employed by an employer," subject to several exemptions.  *Id.* § 2000e(f).  As relevant here, Title VII does not cover "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an *appointee on the policy making level* or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office."  *Id.* (emphasis added).  Defendants argue that Ms. Arnold is an "appointee on the policy making level" and therefore not protected by Title VII.  *See* [Doc. 81 at 19].

As the Court has previously discussed, *see* [Doc. 80 at 19], the exemption at issue applies if the individual has "been appointed by an elected official, and . . . acted as a policy maker." *Crumpacker v. Kan., Dep't of Hum. Res.*, 474 F.3d 747, 752 (10th Cir. 2007). Determining whether a person has been appointed is a "two-step process" that involves "decid[ing] the meaning of applicable [state] law" and, if it is "indeterminate," reviewing "the underlying facts." *Id.* at 753. Neither Party has suggested that any provision of Colorado law is relevant to understanding Ms. Arnold's employment, so the Court looks at the underlying facts on summary judgment: (1) Ms. Arnold was hired as part of a competitive process that involved interviewing a pool of candidates and was not understood as an appointment process; (2) Ms. Arnold was not a policymaker for the District. *See* [Doc. 88 at 5 ¶¶ 1–2; Doc. 92 at 4 ¶ 1; Doc. 88-2 at ¶¶ 4–5]. While Defendants provide attorney argument about the nature of Ms. Arnold's various responsibilities as Superintendent, [Doc. 81 at 19–20], they fail to reckon with how their admission that "Ms. Arnold was not a District policymaker" renders the *Crumpacker* inquiry over before it can begin. *See* [Doc. 92 at 4 ¶ 1]; *see also Anderson v. City of Albuquerque*, 690 F.2d 796, 800–801 (10th Cir. 1982) (noting, in refusing to apply exemption, that the "typical duties" in plaintiff's job description did not "involve[] formulating policy"); [Doc. 88 at 22 ("Defendants cite to no evidence, only naked assertions, to support [their] position.")]. Ms. Arnold is correct that, on this record, this issue is largely controlled by the Court's analysis in the Order on Motion to Dismiss, which Defendants do not address. *See* [Doc. 88 at 22–23]; *see also* [Doc. 80 at 18–20]. Summary judgment will not be granted on this ground.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1)     Defendants' Motion for Summary Judgment [Doc. 81] is **DENIED**; and

(2)     A Telephonic Status Conference is **SET** for **December 12, 2023, at 10:00 a.m.**, for the purpose of setting a Final Pretrial/Trial Preparation Conference and trial in this matter.   The Parties should meet and confer in advance concerning their availability for trial settings in or after April 2024.   The Parties shall participate using the following dial-in information: 888-363-4749; Access Code: 5738976#.

DATED:  December 5, 2023

BY THE COURT:

Nina Y. Wang
United States District Judge